PORTE W. HEWINS & another *vs.* LONDON ASSURANCE CORPORATION.

SAME *vs.* WILLIAMSBURG CITY FIRE INSURANCE COMPANY.

SAME *vs.* CONTINENTAL INSURANCE COMPANY.

SAME *vs.* SUN INSURANCE OFFICE.

SAME *vs.* QUEEN INSURANCE COMPANY OF AMERICA.

SAME *vs.* HARTFORD FIRE INSURANCE COMPANY.

SAME *vs.* FIRE ASSOCIATION OF PHILADELPHIA.

SAME *vs.* HOLYOKE MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* DORCHESTER MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* MERCHANTS AND FARMERS MUTUAL FIRE INSURANCE COMPANY.

SAME *vs.* TRADERS AND MECHANICS MUTUAL INSURANCE COMPANY.

SAME *vs.* PAWTUCKET MUTUAL FIRE INSURANCE COMPANY.

Suffolk.    March 10, 1903. — September 16, 1903.

Present: KNOWLTON, C. J., LATHROP, BARKER, HAMMOND, & LORING, JJ.

*Insurance, Fire.*

In determining the amount of a partial loss by fire under a policy in the Massachusetts standard form, issued after the enactment of the building laws of Boston, on a building in that city erected before those laws were passed, the increased cost of repairing the building by reason of the building laws may be considered.

The provision in the Massachusetts standard form of fire insurance policy that in case of a partial loss the insurer may "replace the property with other of the same kind and goodness," in a policy issued on a building in Boston after the

enactment of the building laws of that city, must be held to apply only to repairs in which replacement with materials of the same kind and goodness would be lawful.

A policy issued by a foreign fire insurance company, on a building in Boston erected before the enactment of the building laws of that city, provided that the loss or damage should in no event exceed what it would cost the insured to repair or replace the property with material of like kind and quality, and also provided that the insurer should not be liable beyond the actual value destroyed by fire for loss occasioned by ordinance or law regulating construction or repair of buildings. The building laws were in force when the policy was issued. *Held,* that in determining the amount of a partial loss by fire under this policy, the loss was to be estimated as if there were no building laws.

The provision of St. 1894, c. 522, § 60, that no fire insurance company shall issue policies on property in this Commonwealth, other than those in the standard form, except as therein provided, and § 105 of the same statute, imposing a fine for issuing a policy in violation of § 60, and providing that the policy shall nevertheless be binding upon the company issuing it, do not change the legal effect of a policy issued in violation of the statute, and a policy so issued must be construed as it reads and not as if it were in the standard form.

TWELVE ACTIONS OF CONTRACT by the same plaintiffs against different fire insurance companies on twelve several policies, eleven of them in the Massachusetts standard form and the twelfth in the Rhode Island standard form, each action for a balance alleged to be due upon a partial loss by fire of the Advertiser Building on Washington Street in Boston. Writs dated September 11, 1901.

In the Superior Court the cases were heard by *Richardson,* J., without a jury. He found the facts to be as stated in an agreed statement of facts filed in the case, and on those facts found for the defendant in each case. By agreement and at the request of the parties he reported the cases for determination by this court.

The fire occurred on March 15, 1901. The policies were issued on or about February 1, 1899. The building laws of Boston, St. 1892, c. 419, St. 1894, c. 443, were passed after the erection of the building. The amount of the loss was referred to three disinterested referees under the terms of the policies, with the agreement that they should find what sum would be an indemnity to the assured in the absence of the building laws, and another sum which would be an indemnity if the building laws were to be considered in their finding, that the smaller sum should be paid to the assured within sixty days, and that the plaintiffs should bring actions for the difference.

On May 1, 1901, the referees made the following award: "We award $30,610 as indemnity to the assured in case we have no right as a matter of law to consider said building laws. But if we have a right as a matter of law to consider said building laws, we award $45,792." The smaller sum was paid to the plaintiffs by the insurance companies, and the plaintiffs brought these actions for the balance.

It was agreed, that if the referees had the right in determining the amount of damages to which the plaintiffs were entitled to take into consideration the increased cost of repairing the building by reason of the building laws, judgments were to be entered for the plaintiffs against the several defendants for the amounts respectively declared on, with interest from May 1, 1901; otherwise judgments were to be entered for the defendants.

*A. Hemenway,* for the plaintiffs.

*S. J. Elder & R. F. Herrick,* for the defendants.

HAMMOND, J.   In these twelve cases the question is whether the referees, in determining the amount of damages to which the plaintiffs were entitled, "had the right to take into consideration the increased cost of repairing the building by reason of the building laws."

In each case the question calls for the construction of the contract of insurance.   It is plain, to begin with, that the contract does not cover all the loss suffered by the insured by reason of the fire, such as interruption of business, loss of profits or even loss of rents.   Nor is the insurer bound to repair, although for obvious reasons it has the option to do so.   The contract simply insures the plaintiffs "against loss or damage by fire" to the building with its appurtenances and fixtures.   It is a contract of indemnity.   Ordinarily the loss or damage by fire is the difference between the value of the building before the fire and the value of what remains after the fire, and that difference is to be regarded as the true loss covered by the policy unless there be in the policy some language by which some element of that difference is excluded.   Where the building is only partially destroyed and the proper course is to repair, as in the cases before us, it is manifest that in estimating the value of the part remaining the cost of the necessary repairs is a very material matter; and, if the repairs must conform to certain legal requirements, the

nature of those requirements is also to be considered. In considering the cost of repairs it would not be profitable to think of repairs which the law forbids, but only of those which the law does not forbid. This rule of estimating the damage to real estate by reason of some injurious change is of very general application. A familiar illustration is to be found in suits for damages for land injured in the exercise of the right of eminent domain.

It may happen that after being repaired a building is of greater value than before the fire, and in marine insurance there is a rule of quite general application by which an allowance is made to the insurer on that account; but in the present cases we have no occasion to inquire whether any such allowance should be made because the only question raised upon the report and submitted to us is whether " the referees had the right, in determining the amount of damages to which the plaintiffs were entitled, to take into consideration the increased cost of repairing by reason of the building laws." If they had that right the sum is agreed upon.

It therefore becomes necessary to look into the policies and see whether they contain anything which is inconsistent with this method of estimating the loss. With the exception of the policy issued by the Pawtucket Mutual Fire Insurance Company, which is reserved for separate consideration, they are all of the form known as the Massachusetts standard, and each contains the following provision : " In case of any loss or damage, the company . . . shall either pay the amount for which it shall be liable, which amount, if not agreed upon, shall be ascertained by award of referees as hereinafter provided, or replace the property with other of the same kind and goodness, or it may . . . notify the insured of its intention to rebuild or repair the premises." Three courses are open to the company. It may pay in cash, may replace the property with other of the same kind and goodness, or may make the repairs. Neither defendant has chosen to repair. It is to be noted that there has been no change in the building laws since the policies were issued, and that fact must be borne in mind in construing them. They cover not only the building, but also the " additions, including plate glass, fresco work, piping of all kinds, plumbing, engines, boilers, connections and

all appurtenances to same," machinery, fixtures and "sidewalks adjacent." It is obvious that there were many ways in which the insured property might have been damaged by fire where there could have been lawful replacement or repair with property of the same kind and goodness. It is not to be presumed that the parties intended to contract for the doing of that which could not lawfully be done. Inasmuch as at the time the contracts were made two kinds of loss by fire might have been reasonably apprehended, one where the law would permit such repair or replacement, and the other where it would not, the clause must be regarded as intended to apply only to the first class of cases. It can have no application to the class where its application would be legally impossible. Hence it can have no bearing even as to the method in which the amount to be paid in cash should be ascertained so far as respects the second class. We find nothing else in the policies which needs to be considered on this point. The result is that there is nothing in the policies to change the general rule that, where a building is partially destroyed by fire, the loss is the difference between the value of the building before the fire and the value of the part remaining after the fire.

The referees, however, have reported that, if the building laws were not to be considered, $30,610 would be full indemnity to the assured, but, if they are to be considered, then the sum should be $45,792; and it is strenuously contended by the defendants that the difference between these two sums is a loss attributable not to the fire, but to the building laws; that it is not covered by the policy, and that the cost of restoring the building to its original condition is the true measure of the risk assumed by them.

This position seems to us untenable. The building laws were the same at the time of the fire as at the time the policies were issued. The only change in the situation was in the physical condition of the building, and that change was caused wholly by the fire. The building laws simply constituted one of the conditions of the situation. While it is true that by reason of their existence the loss caused by the ravages of the fire was greater than it otherwise would have been, it is none the less true that the sole operating cause of the change in the building was the

fire, and as above stated in the absence of any provision in the policy expressly excluding from the damages the part arising out of that condition, that part is not to be excluded, but is to be regarded as primarily the result of the fire, or as "loss or damage by fire." In *Brady* v. *Northwestern Ins. Co.* 11 Mich. 425, it was held that where an ordinance prevented the repair of a building which had been partially destroyed by fire the loss was total, although the cost of restoring the building to its original condition would have been much less than the amount of insurance. The case seems to have been elaborately argued, and the reasoning of the court by which the decision was supported seems to us to be sound. The same principle has been recognized in other jurisdictions. *Monteleone* v. *Royal Ins. Co.* 47 La. Ann. 1563. *Hamburg-Bremen Ins. Co.* v. *Garlington*, 66 Tex. 103. *Larkin* v. *Glens Falls Ins. Co.* 80 Minn. 527. These cases support the general proposition that where the law prohibits the repair of a building which has been partially destroyed by fire, in the absence of any express provision in the policy to the contrary, the loss is not measured by the sum required to restore the building to its condition before the fire, but it is total, less the value of the remaining materials for removal. Since the change in the building is caused solely by the fire, the difference in its value caused by that change is loss or damage by fire within the meaning of the policy, in the absence of anything therein to the contrary. The principle is the same whether its application results in a total loss, or in an increase of a partial loss, as in *Pennsylvania Co. for Insurance* v. *Philadelphia Contributionship*, 201 Penn. St. 497. It follows that in each of the cases except that against the Pawtucket Mutual Fire Insurance Company judgment is to be entered for the plaintiffs in accordance with the terms of the report.

The policy issued by the Pawtucket Mutual Fire Insurance Company is materially different from the other policies. It provides that in case of loss the loss or damage "shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality." There is also a provision that the insurer shall not be liable "beyond the actual value destroyed by fire, for loss occasioned by ordinance or law regulating construction or repair of buildings, or by inter-

ruption of business, manufacturing processes or otherwise." The first is a specific clause expressly declaring that in no event shall the sum to be paid in cash exceed the cost of restoring the property to its original condition. The second clause specifically names the building laws. We think that these two clauses mutually strengthen each other, and that when construed together they modify the general rule as to the measure of the loss by fire in such a case as this, and that the fair construction of these two clauses taken together is that such portion of the damage caused by the change in the condition of the building as arises from the existence of the building laws, whether regarded as a condition or a cause, is not to be considered as a loss or damage by fire, but is to be excluded from consideration, and the loss is to be estimated as if there were no building laws affecting the situation.

It is urged by the plaintiffs that, this policy being different from the standard prescribed by our statutes and the difference not being indicated thereon as required by law, the differences are null and void and the policy is to be construed as though it were conformable to the standard; and in support of that proposition they have cited cases like *Queen Ins. Co.* v. *Leslie*, 47 Ohio St. 409, in which it is held that where a statute provides a certain rule for the interpretation of a policy the statute must be regarded as incorporated in the policy issued when the law is in force, and being so incorporated must prevail over such other provisions as are inconsistent with it. But such cases are not applicable here. The statute in force when this policy was issued did not provide how the policy should be interpreted. It provided, it is true, a standard form, stated in what way and to what extent the form might be modified, declared that no company should issue a different policy and that if it did it should be subject to a fine, but also declared that the policy should be binding upon the company. St. 1894, c. 522, §§ 60, 105. It does not provide any rule of interpretation of a policy issued contrary to law, nor does it say that the policy shall be void. On the contrary it fines the company for issuing the policy and declares it to be binding upon the company. Its legal effect is not changed. The illegal policy is not changed by law so as to conform to the legal standard. The insured may sue upon it, but it must be

construed as it reads.   No statute is incorporated in it.   The penalty suffered by the company is a fine, and not a liability to be held on a contract different from that made by it.   It follows therefore that as to this one policy the amount recovered cannot exceed its part of the sum equal to an amount needed to restore the building to its original condition, and in this case judgment should be entered for the defendant.   As to the other cases judgments should be entered for the plaintiffs in accordance with the report, and it is

*So ordered.*