## Richmond

ETHEL WEINSTEIN v. COMMERCE INSURANCE COMPANY, A
CORPORATION, SAINT PAUL FIRE AND MARINE INSURANCE
COMPANY, A CORPORATION, AND AMERICAN
EQUITABLE ASSURANCE COMPANY.

June 21, 1954.

Record No. 4227.

Present, Eggleston, Spratley, Buchanan, Smith and Whittle, JJ.

The opinion states the case.

*Henry B. Crockett* and *John Barton Phillips*, for the
plaintiff in error.

*Boothe, Dudley, Koontz & Boothe*, for the defendants in
error.

WHITTLE, J., delivered the opinion of the court.

Appellant, Ethel Weinstein, owned a lot in the City of Alexandria, with improvements thereon consisting of a four-story frame structure comprising nine apartments. The building was insured against loss by fire in the sum of $26,800 under the Virginia statutory fire insurance policies issued by the three appellee companies.

A fire occurred on January 9, 1951, causing damage to the building, the agreed cost of repair being $8,745.24. Appellant contended that as the zoning ordinances of the city would not permit her to repair the building for use as "apartments", her loss was total and she was entitled to the sum of $26,800, the full coverage. Three suits were instituted against appellees for this amount.

By agreement the suits were consolidated, a jury was waived, and the cases were submitted to the court for decision.

The following stipulation was entered into between the parties:

"1. That at the time of the fire there were five policies of fire insurance in effect, three having been issued by the defendant, Commerce Insurance Company, aggregating $12,000.00, one by the defendant, American Equitable Assurance Company, in the amount of $11,300.00, and one by the defendant, Saint Paul Fire and Marine Insurance Company in the amount of $3,500.00, making a total of $26,800.-00 of fire insurance in effect on the premises at the time of the fire.

"2. That the policies were the standard type fire policies as provided by the Code of Virginia (Section 38-188).

"3. That at the time of the fire the title to the property was vested in the plaintiff, Ethel Weinstein.

"4. That if the property was a total loss, then the value of the property before the fire equaled or exceeded $26,-800.00, the face amount of the policies.

"5. That the cost of repairing the property damaged by fire would be $8,745.24.

"6. That the building had been used as an apartment house since prior to 1928, which was before the zoning laws of the City of Alexandria became effective.

"7. That at the time of the fire, the property was insured as an apartment house, and it was so shown upon the policies. By reason thereof, the property carried a higher rate."

Upon the conclusion of the evidence the court entered an order on March 10, 1953, holding "that the plaintiff should recover only from the defendants the sum of $8,-745.24 for the reason that in the opinion of the court the terms of the fire insurance policies involved did limit the liability of the defendants to the amount which it would cost to repair or replace the property destroyed by the fire and involved in these actions with material of like kind and quality."

From this order the plaintiff appealed, asserting: "The court erred in holding that the fire insurance policies involved did limit the liability of the defendant to the amount which it would cost to repair or replace the property destroyed by fire, with material of like kind and quality."

The record discloses that after the fire Miss Weinstein applied to the City Building Inspector for permission to repair the building for use as an "apartment house". The inspector refused to permit the repairs for the specified use, and an appeal was taken to the City Board of Zoning Appeals. The board refused the application, stating "that the operation of the apartment house will involve a fire hazard contrary to the best interests of the health, safety and welfare of the occupants and of the adjoining property owners." Miss Weinstein further appealed from the decision of the board to the Corporation Court of the City of Alexandria but the suit was abandoned and the appeal dismissed.

The Weinstein property was located outside the city fire

limits and was situated in an "A" residential zone where the repair of frame buildings would have been permitted for most of the uses authorized in the zone, such as boarding houses or single family dwellings. Miss Weinstein insisted, however, that it would be financially impracticable to repair the building for any use other than an "apartment house".

No contention is made that the building was damaged beyond repair; on the contrary the evidence introduced, together with picture exhibits showing the fire damage to the building, indicates that the agreed sum of $8,745.24 was amply sufficient to repair the direct damage caused by the fire. Furthermore, expert evidence was introduced by appellees which showed that if the building were repaired for use as a boarding house, which would have been permitted under the ordinance, its value would be only $2700 less than its value as an apartment house. While this evidence is interesting to show that in no event was Miss Weinstein's loss total, in our view it has no bearing on the ultimate decision.

As aforesaid, the policies covering the risk here involved were Virginia standard policies, the provisions thereof conforming to statutory requirements. Code of Virginia, 1950, § 38-188 (now §§ 38.1-365 and 38.1-366, 1953 Replacement Volume, pp. 352, 353). The policies are in the precise language of the statute and contain the following terms:

"In consideration of the provisions and stipulations herein or added hereto * * * this company * * * does insure Ethel Weinstein and legal representatives, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair * * * against all direct loss by fire * * * to the property described hereinafter * * * .

"This company shall not be liable for loss by fire or other perils insured against in this policy, caused, directly or indirectly, by \* \* \* (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire \* \* \* ."

Virginia's fire insurance law, including the above quoted provisions, was modeled after the New York standard policy, which has covered three major periods of time, each being known as the "New York Standard Policy" until replaced by its successor. The first New York Standard Policy was adopted in 1886[1], and was in effect until replaced by the policy adopted in 1918[2], which in turn was replaced by the latest version in 1943[3]. The applicable provisions in the

---

[1] The 1886 New York Standard Policy provided: " \* \* \* .

"This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation however caused, and shall in no event exceed what it would then cost the insured to repair or replace the same with materials of like kind and quality; \* \* \*

"This company shall not be liable for loss caused directly or indirectly by \* \* \* order of any civil authority;

"This company shall not be liable for loss \* \* \* beyond the actual value destroyed by fire, for loss occasioned by ordinance or law regulating construction or repair of buildings \* \* \* ".

[2] The 1918 New York Standard Policy provided: " \* \* \*

"Does insure \* \* \* to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace same with material of like kind and quality within a reasonable time after such loss or damage, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair \* \* \* .

"This company shall not be liable for loss or damage caused directly or indirectly by \* \* \* order of any civil·authority; \* \* \* ".

[3] The 1943 New York Standard Policy provides: " \* \* \*

"To the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, \* \* \* .

"Perils not included. This company shall not be liable for loss by fire or other perils insured against in this policy caused, directly or indirectly,

1943 standard policy were adopted by Virginia and carry the quoted provisions here under consideration.

Cases cited in appellant's brief deal with New York standard policies in existence at the time the cases were decided and must be viewed in the light of the policy provisions then in effect. In other instances the cited cases are from so-called valued policy States which are in a category entirely different from Virginia and other States which are not valued policy jurisdictions. The valued policy States have statutes which supersede the provisions of the insurance contract between the parties. The statutes in these States vary in terms, some add provisions to the policies as written, while others delete them. Generally the statutes add to the policies a provision that the amount of the policy shall be taken conclusively to be the value of the property when insured and the amount of loss when destroyed. Cases from valued policy States must be considered in the light of the various statutes. Appellant cites such cases in her brief which, for the reasons aforesaid, are not applicable here. See *City of New York Fire Ins. Co.* v. *Chapman*, (CCA 7, 1935), 76 F. (2d) 76, interpreting the law of Wisconsin; *Dinneen* v. *American Ins. Co.*, 98 Neb. 97, 152 N. W. 307, interpreting the law of Nebraska; *Hamburg-Bremen Fire Ins. Co.* v. *Garlington*, 66 Tex. 103, 18 S. W. 337, interpreting the law of Texas; *Larkin* v. *Glens Falls Ins. Co.*, 80 Minn. 527, 83 N. W. 409, interpreting the law of Minnesota; *Liverpool & London & Globe Ins. Co.* v. *Nebraska Storage Warehouses* (CCA 8, 1938), 96 F. (2d) 30, interpreting the law of Nebraska; *Security Ins. Co.* v. *Rosenberg*, 227 Ky. 314, 12 S. W. (2d) 688, interpreting the law of Kentucky.

Appellant also relies upon the case of *Rutherford* v. *Royal Ins. Co., Ltd.* (CCA 4, 1926), 12 F. (2d) 880. The facts

by * * * (h) order of any civil authority except acts of destruction at the time of and for the purpose of preventing the spread of fire, provided that such fire did not originate from any of the perils excluded by this policy."

in that case are substantially different from those in the instant case. The *Rutherford* case involved a brick building, the walls of which were condemned after the fire and ordered razed. Under these circumstances the Court of Appeals held that a factual question was presented as to whether or not the fire had caused a total loss, and "that the District Court was in error in refusing to submit the question of total loss to the jury", and the case was therefore remanded for a new trial.

Extracts from the opinion in the *Rutherford* case give comfort to appellant's theory but the annotation in 49 A. L. R. 814, 817, where the case is reported and annotated, indicates the distinction between the holding there and cases similar to the one before us.

While the Weinstein case is one of first impression in Virginia, we experience no difficulty in concluding that the contracts of insurance are plain and free from difficult interpretation. The policies insured Miss Weinstein's property "to the extent of the actual cash value of the property at the time of loss, *but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality*." (Italics supplied) The learned trial judge therefore properly held that the recovery was limited to the cost of repairing or replacing the damaged property with material of like kind and quality, which cost was admittedly the sum of $8,745.24. *Hewins* v. *London Assurance Corp.*, 184 Mass. 177, 68 N. E. 62; *McCready* v. *Hartford Fire Ins. Co.*, 61 N. Y. App. Div. 583, 70 N. Y. Supp. 778; *Midwood Sanatorium* v. *Firemen's Ins. Co.*, 261 N. Y. 381, 185 N. E. 674; *Boskowitz* v. *Continental Ins. Co.*, 175 N. Y. App. Div. 18, 161 N. Y. Supp. 680; *Providence Washington Ins. Co.* v. *Board of Education*, 49 W. Va. 360, 38 S. E. 679; *Gouin* v. *Northwestern National Ins. Co.*, 145 Wash. 199, 259 Pac. 387.

The case of *Hewins* v. *London Assurance Corp.*, *supra*, is instructive; the able opinion distinguishes the contentions here relied on by appellant. There a municipal ordinance

prevented the repair or replacement of the damaged structure as in the instant case. Twelve separate policies were involved in the *Hewins* case. The terms employed in eleven of these policies differed from the terms employed in the policies before us. One policy, that issued by the Pawtucket Mutual Fire Insurance Company, contained the 1886 version of the New York standard policy. This policy contained the clause that the loss "shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality". The plaintiff was permitted to recover for total loss under eleven of the twelve policies, but under the Pawtucket policy the recovery was limited to the cost of repairing and replacing the damage with material of like kind and quality. The court said:

"Ordinarily the loss or damage by fire is the difference between the value of the building before the fire and the value of what remains after the fire, and that difference is to be regarded as the true loss covered by the policy unless there be in the policy some language by which some element of that difference is excluded.

"The policy issued by the Pawtucket Mutual Fire Ins. Co. is materially different from the other policies. It provides that in case of loss the loss or damage 'shall in no event exceed what it would cost the insured to repair or replace same with material of like kind and quality.'

"It follows, therefore, that as to this one policy, the amount recovered cannot exceed its part of the sum equal to an amount needed to restore the building to its original condition, and in this case judgment should be entered for the defendant. As to the other cases, judgment should be entered for the plaintiff in accordance with the report, and it is so ordered."

The case of *McCready* v. *Hartford Fire Ins. Co., supra,* involved a construction of the 1886 New York Standard Policy. There the plaintiffs were prohibited from repairing the damaged building due to the fact that it was not of

fireproof construction as required by the city ordinance. The court said:

"The real question upon this branch of the case is, what is the measure of liability of the defendant under its policy? The plaintiffs insist that it is the value of the building as it stood just before the fire. Under the terms and conditions of the policy in suit, which is in the standard form required by the law of the State of New York, the parties have themselves agreed upon the measure of liability; the extent of it being distinctly provided for by a stipulation in the policy binding upon both parties. It is provided in the policy that 'this company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value with proper deduction for depreciation, however caused.' Thus far, and if nothing more were contained in the policy, it is apparent that if there were a total destruction of that property, the company would be liable for its actual cash value at the time the loss or damage occurred; but the policy also provides that the liability of the underwriter 'shall in no event exceed what it would then cost the insured to repair or replace the same with material of like kind and quality'. The standard form of policy was prepared under the authority of Chapter 488 of the laws of 1886 and the use of that form is made by statute obligatory upon all companies doing business of fire insurance within the State of New York. When the policy of insurance in this case was issued, therefore, not only was the measure of damage a stipulation of the policy, but the law respecting fireproof buildings had been in operation for many years; and the Standard Policy was adopted in view of existing provisions of law and the decisions of the Courts of the State of New York concerning the extent of the liability of fire underwriters. We will assume that the ordinary rules of construction apply to all the provisions of the Standard Policy and that interpretation will be made in favor of the insured and for the

purpose of granting him stipulated indemnity for his loss and that but for the stipulation, the measure of indemnity would be the difference between the actual cash value of the property just before the fire and its value after the fire, if there is a partial loss; but here the parties have agreed to a particular limitation of liability which 'in no event' shall exceed the amount to be ascertained within that limitation. The stipulation does not refer to an election by the insurer to rebuild, but to the measure of the liability of the underwriter."

The *McCready* case has been affirmed in numerous decisions, including the more recent case of *Midwood Sanatorium* v. *Firemen's Ins. Co., supra.* The *Midwood Sanatorium* case is pertinent to the case at bar for the damaged building in that case was susceptible of being repaired with material of like kind and quality without violating the city ordinance, as was true in the instant case. The ordinance, however, prohibited the building, if so repaired, from being used as a sanatorium. The court said:

"In this case the evidence shows that the damaged portion of the building could be repaired or replaced with material of like kind and quality without violation of any municipal ordinance of the City of New York, but that, if such repairs or replacements were made, the owner would not be allowed to occupy the building as a sanatorium, and that the building could not profitably be used for any other purpose. The ordinances of the City of New York required a different form of construction and better means of egress for buildings used for the care of the sick; and, though the city authorities had not previously objected to continued occupancy by the plaintiff of a building which did not comply with such requirements, they would not grant any permit for such occupancy after repairs necessitated by the fires were made. The Appellate Division has held that under such circumstances the owner has not suffered a total loss of the value of the building. Strong argument could be made in support of that conclusion, but it is unnecessary to

decide such question for by the terms of the policy the insurance company has agreed to pay loss and damage to the premises by fire 'but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality * * * without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair.' The owner accepted that limitation upon the liability assumed by the insurer. In no event can it be entitled to more than such cost. In all the cases cited above, the policies contained no such limitation on the liability assumed by the insured, except one policy, among several, in *Hewins* v. *London Assur. Corp.*, *supra*, and there the court enforced that limitation. The defendant clearly cannot be held to any liability beyond that which it assumed."

As indicated, the cases relied on by appellant in support of her contention that she is entitled to full recovery, are distinguishable either under the terms of the policy provisions or the facts, or else they are from those jurisdictions which have enacted valued policy statutes superseding the contractual provisions of the policies.

For the reasons stated the judgment of the trial court is

*Affirmed.*