**Frances SALISBURY, individually and in her capacity as Executrix of the Estate of Charles F. Salisbury, Plaintiff,**

**v.**

**MONUMENTAL LIFE INSURANCE COMPANY, Defendant.**

**No. Civ.A. 96–11925–PBS.**

United States District Court, D. Massachusetts.

April 6, 1998.

Max Wistow, Mark H. Grimm, Wistow & Barylick Inc., Providence, RI, for Plaintiff.

Kenneth J. DeMoura, Burpee & DeMoura, Boston, MA, for Defendant.

## MEMORANDUM OF DECISION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

SARIS, District Judge.

The Plaintiff Frances Salisbury ("Salisbury") brought this action for the collection of benefits on a life insurance policy against the insurer, Defendant Monumental Life Insurance Company ("Monumental"). Monumental seeks to avoid payment on the policy because Mr. Salisbury failed to disclose material information about his past medical history of stroke which would have increased the risk of loss within the meaning of Mass. G.L. c. 175, § 186. Salisbury contends that Mass.G.L. c. 175, § 131 applies to the policy at issue, and Monumental is therefore barred from relying on any misstatements in the portions of the application that were not attached to the policy. The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. Both parties have file cross-motions for summary judgment. After hearing and for the reasons set forth below, the plaintiff's motion is **ALLOWED**. The defendant's motion is **DENIED**.

### I. UNDISPUTED FACTS

The Court treats the following facts as undisputed, unless otherwise noted:

Monumental is a Maryland corporation licensed and authorized to do business in Massachusetts. In 1991, Monumental issued a mortgage life insurance policy to the Trustees of the National Homeowners Group Insurance Trust in Tennessee. Under the terms of the policy, lending institutions or mortgage bankers, as parties to the Trust, are eligible to participate in the insurance. First Federal Savings Bank of America ("First Federal") in Fall River, Massachusetts is a party to the Trust, and was therefore eligible to participate in the insurance. A policy was issued to First Federal with an effective date of December 1, 1993.

In March of 1994, Frances Salisbury and her husband, Charles Salisbury, had an existing home mortgage with First Federal. At that time, Mr. Salisbury applied for a mortgage life insurance policy with Monumental. Mr. Salisbury filled out and signed a two-

page application that he submitted to Monumental. On the second page of the application, Question # 2, Mr. Salisbury was asked: "Have you ever been diagnosed with or treated for any disease or disorder or heart, blood, lungs, liver, kidneys, AIDS or AIDS-related complex, any mental, nervous, circulatory, digestive or immune disorder, high blood pressure, cancer or tumor, diabetes, drug or alcohol abuse?" Mr. Salisbury answered "Yes," and disclosed that he had been treated for alcohol abuse in the past. He did not, however, disclose that in August 1986, he had been hospitalized and diagnosed with suffering a cerebrovascular accident (CVA) with left hemiparesis.

Monumental received the application and issued a "certificate of insurance" for mortgage life insurance to Mr. Salisbury on July 1, 1994. Attached to the policy was a copy of only the front page of the application. For reasons that are obscure, a copy of the second page of the application, which contained Mr. Salisbury's response to Question # 2, was not attached.

The policy provided for payment of benefits equal to one-hundred percent of the outstanding balance of the insured's mortgage, with a maximum benefit payable under the policy of $300,000 and a minimum of $50,000. In the event of insured's death, benefits were to be paid to the beneficiary (the lender) up to the amount of the outstanding mortgage, and any excess benefits were to be paid to the insured's estate.[1] The initial amount of coverage listed on Mr. Salisbury's policy was $142,243.60. Mr. Salisbury was charged an annual premium of $1,043.76

On August 26, 1995, nearly fourteen months after the issuance of the policy, Mr. Salisbury died of lung cancer. Because his death occurred within the two-year contestability period, Monumental began an investigation to verify the accuracy of information in Mr. Salisbury's application.

By letter dated February 22, 1996, Monumental notified Mrs. Salisbury that it was denying her claim because Mr. Salisbury had failed to disclose information relating to his

1986 hospitalization in his application. In the letter, Monumental stated: "This information was material to the risk, and had we known he had a cerebrovascular accident in 1986, we would have not approved his application for the mortgage life insurance." Monumental enclosed a check for $1,672.72 as reimbursement for premiums paid. The outstanding balance on Mr. Salisbury's mortgage at the time of his death was $130,739.90.

Mrs. Salisbury rejected Monumental's check and commenced the instant action.

## II. DISCUSSION

### A. *Summary Judgment Standard*

A motion for summary judgment must be allowed if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "It is apodictic that summary judgment should be bestowed only when no genuine issue of material fact exists and the movant has successfully demonstrated an entitlement to judgment as a matter of law." *In re Varrasso*, 37 F.3d 760, 762 (1st Cir.1994) (citing cases). "To succeed [in a motion for summary judgment], the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" *Barbour v. Dynamics Research Corp.*, 63 F.3d 32, 37 (1st Cir.1995) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "There must be 'sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.

---

1. Excess benefits would be payable if the outstanding mortgage balance was less than the $50,000 minimum due under the policy.

If the evidence is merely colorable or is not significantly probative, summary judgment may be granted.'" *Rogers*, 902 F.2d at 143 (quoting *Anderson*, 477 U.S. at 249–50) (citations and footnote in *Anderson* omitted). The Court must "view the facts in the light most favorable to the non-moving party, drawing all reasonable inferences in that party's favor." *Barbour*, 63 F.3d at 36.

The standards are the same where, as here, both parties have moved for summary judgment. "When facing cross-motions for summary judgment, a court must rule on each motion independently, deciding in each instance whether the moving party has met its burden under Rule 56." *Dan Barclay, Inc. v. Stewart & Stevenson Serv., Inc.*, 761 F.Supp. 194, 197–98 (D.Mass.1991) (citing 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2720 (2d ed.1983)). The Court may not resolve genuine issues of material fact on cross-motions for summary judgment. *See Boston Five Cents Savings Bank v. Secretary of Department of Housing and Urban Development*, 768 F.2d 5, 11–12 (1st Cir. 1985) (noting difference between cross motions for summary judgment and decision on stipulated record).

## B. *Group Life or Not*

■ The key issue raised by the parties' cross-motions is whether the material misstatements made by Mr. Salisbury in his application may be considered part of the policy or introduced into evidence for any purpose. Summary judgment, therefore, turns on the applicability of Mass.G.L. c. 175, § 131 to the policy at issue. The statute states:

> Unless a correct copy of the application is endorsed upon or attached to a policy of life or endowment insurance, when issued, the application shall not be considered part of the policy or received into evidence for any purpose. Each such policy which contains a reference to the application, either as part of the policy or as having any bearing thereon, shall have endorsed thereon or attached thereto, when issued, a correct copy of the application.

Mass.G.L. c. 175, § 131. The purpose of this section is to "furnish for every person holding insurance on his life a copy of the application on which the effectiveness of the policy might in some circumstances depend, so that he may know the exact terms of the policy." *Schiller v. Metropolitan Life Ins. Co.*, 295 Mass. 169, 173, 3 N.E.2d 384 (1936). "Where the insurer fails to attach a correct copy, it cannot rely, in an action against it on the policy, on misstatements in the application as a defense." *Pahigian v. Manufacturers' Life Insurance Co.*, 349 Mass. 78, 84, 206 N.E.2d 660 (1965).

Though the cases apply the statute strictly, "[s]light or immaterial deviations from the exactness of the copy do not require exclusion of the application .... Alterations are regarded as material when they might affect the rights of the parties." *Id.* (quoting *Schiller, supra*, at 174, 3 N.E.2d 384). However, where the alteration or omission of the application would affect the rights of the parties, "no tribunal has the right to say the statute does not apply." *Albro v. Manhattan Life Ins. Co.*, 119 F. 629, 632 (C.C.D.Mass.1902), *aff'd* 127 F. 281, *cert. denied*, 194 U.S. 633, 24 S.Ct. 857, 48 L.Ed. 1159. In *Albro*, the Court recognized the potential hardship this could impose on insurers: "It is not a very satisfactory disposition of a statute which, having been passed for the purpose of helping out inattentions or misapprehensions on the part of persons insured, then enables such persons to foreclose, without any possible relief for underwriters, remedies against the grossest fraud."[2] *Id.* at 633. Nevertheless, this Court will apply the statute "as the undoubted rule of evidence in that state." *Id.* at 634.

Here, Monumental concedes, as it must, that it has no defense against Salisbury's claim if the application containing the material misrepresentation cannot be considered part of the policy or introduced into evidence.

---

2. *Albro* dealt with St. 1894, ch. 522, § 73, a predecessor statute to Mass.G.L. c. 175, § 131, which stated in pertinent part: "every policy which contains a reference to the application of the insured must have attached thereto a copy of the application, and unless so attached the same shall not be considered a part of the policy, or received in evidence."

Monumental contends, however, that because the policy at issue is "group life insurance," under Mass.G.L. c. 175, § 134, it is not subject to a requirement that an individual application be attached in order to constitute part of the policy or be admissible as evidence. Mass.G.L. c. 175, § 134, entitled "Group life policies; commissioner's approval; contents," states in pertinent part: "The policy, the application of the employer and the individual applications, if any shall constitute the entire contract between the parties, and no statement shall be used in defense of a claim unless contained in a written application." Monumental argues further that it is entitled to avoid payment on the claim as a matter of law because the insured has made a material representation to the insurer which increased the risk of loss within the meaning of Mass. G.L. c. 175, § 186, which states:

> No oral or written misrepresentation or warranty made in the negotiation of a policy of insurance by the insured or in his behalf shall be deemed material or defeat or avoid the policy or prevent its attaching unless such misrepresentation or warranty is made with actual intent to deceive, or unless the matter misrepresented or made a warranty increased the risk of loss.

Mass.G.L. c. 175, § 186.

Salisbury does not dispute that under Mass.G.L. c. 175, § 134 an insurer of a group policy is exempted from the obligation under Mass.G.L. c. 175, § 131 to attach a correct copy of the application to the life insurance policy. Rather, Salisbury contends that Monument may not avail itself of such an exemption because the policy at issue fails to meet the statutory definition of "group life insurance" contained in Mass.G.L. c. 175, § 133. *See* 1 Lee R. Russ, Couch on Insurance § 8:1 (3d ed. 1997) ("Any group policy of insurance must obviously satisfy any applicable statutory requirements.").

In pertinent part, Mass.G.L. c. 175, § 133 defines group life insurance as:

> [T]hat form of life insurance covering: ***
> (c) a group of persons who at any time are debtors of a bank, association, financial or other institution, including its subsidiary or affiliated institutions, if any, for a loan, or

of the vendor of any property for its purchase price, or who are co-debtors or guarantors of said obligation, under an agreement to pay said obligation, or who at any time have been granted a policy loan pursuant to a policy provision therefor, written under a policy issued, with or without requirement of evidence of individual insurability, to said bank, association, financial or other institution or vendor, or to a parent holding company, or to the trustee, trustees or agent designated by one or more said banks, associations, financial or other institutions or vendors, or to the insurance company granting said policy loan, and *made payable to said creditor or to the assignee of said obligation, or to said insurance company granting said policy loan,* including the insurance company which issues said policy, and insuring the life of each debtor, co-debtor, guarantor or the person granted said policy loan, *for an amount, with respect to each said obligation or policy loan, not exceeding his individual obligation exclusive of unearned finance charges, or policy loan with interest,* and not exceeding forty thousand dollars ***.

Mass.G.L. c. 175, § 133 (emphasis added). In arguing that the policy at issue fails to meet the statutory definition of group life insurance, the plaintiff points to three specific elements of the policy which are inconsistent with the provisions of the statute underlined above: (1) that benefits under the policy may be payable to the creditor, as well as to the estate of the insured, where the estate is not explicitly permitted to receive benefits under the statute; (2) that the amount of coverage provided in the policy may exceed the individual's obligation under the loan; and (3) that the minimum coverage amount under the policy of $50,000 exceeds the maximum coverage of $40,000 permitted by the statute.

The defendant acknowledges that the policy at issue fails to satisfy the statutory requirements of Mass.G.L. c. 175, § 133, but asserts that the policy should be construed as it reads and treated as a group policy for

purposes of Mass.G.L. c. 175, § 134.[3] It relies on "an oldie but goodie," *Hewins v. London Assur. Corp.*, 184 Mass. 177, 182, 68 N.E. 62 (1903), for the proposition that where a policy fails to conform to statutory requirements, the policy should be enforced according to its written terms nonetheless. Monumental's reliance on this proposition is misplaced because summary judgment turns not on the construction of the written terms of a policy which differs from a statutory standard, but on the applicability of a statutory rule of evidence which hinges on the policy's conformity to a statutory definition of group life insurance.

■ Though the policy at issue is structured as a group policy,[4] "[i]n some cases, what was rather clearly intended to be a group policy may be treated as an individual policy for various reasons." 1 Couch on Ins. at § 7:5; *see Mau v. Union Labor Life Ins. Co.*, 31 N.J.Super. 362, 366, 106 A.2d 748 (1954) (holding that policy failing to conform to statutory definition of group life policy must be treated as individual one-year term contract); *cf. Bennett v. Colonial Life and Accident Ins. Co.*, 7 Kan.App.2d 441, 444, 643 P.2d 1133 (1982) (rejecting insured's argument that policy should be treated as group insurance where policy did not conform to the statutory requirement that entire premium may not be derived from funds contributed by the insured employee).

There are well-established principles which advise against disregarding or modifying the legislature's attempt to define narrowly those policies which may be considered "group life insurance." "[S]tatutory definitions of terms used therein prevail over colloquial mean-

ings." *Western Union Telegraph Co. v. Lenroot*, 323 U.S. 490, 501, 65 S.Ct. 335, 341, 89 L.Ed. 414 (1945). Courts must not "depart from, or otherwise embellish, the language of a statute absent either undeniable textual ambiguity, or some other extraordinary consideration." *Pritzker v. Yari*, 42 F.3d 53, 67 (1st Cir.1994) (citations omitted).

Here, the statutory definition of "group life insurance" under Mass.G.L. c. 175, § 133 is unambiguous, and it is undisputed that the policy at issue does not conform to the statutory definition of group life insurance. It would thus be an impermissible "embellishment" of the laws of Massachusetts to allow a policy which fails to conform in material ways to the statutory definition of group life insurance to avail itself of paragraph 2 of Mass. G.L. c. 175, § 134 which applies only to "group life insurance" as defined by Mass Gen. Laws ch. 175, § 133. Such a result would be especially inappropriate where Mass.G.L. c. 175, § 131 applies generally to "polic[ies]" of life or endowment insurance." *See Considine v. Metropolitan Life Ins. Co.* 165 Mass. 462, 466, 43 N.E. 201 (1896) ("we have no doubt that the legislature intended ... to apply the same principles to life insurance generally.").[5]

Because a correct copy of Mr. Salisbury's application was not attached to the policy, a straightforward interpretation of Mass.G.L. c. 175, § 131 requires that such application not be considered part of the policy or received into evidence for any purpose, thereby stripping Monumental of its affirmative defense to the Salisbury's collection action.

---

3. At oral argument the defendant waived its argument that the policy should be judicially reformed to conform to the statutory definition. *Hewins v. London Assur. Corp.*, 184 Mass. 177, 182, 68 N.E. 62 (1903) defeated any argument for reformation when it held: "The illegal policy is not changed by the law so as to conform to the legal standard. The insured may sue upon it, but it must be construed as it reads."

4. A group insurance policy is a contract of insurance made by a central entity (employer, association, creditor, and so forth) for the benefit of a group of people that have some relationship to the central entity (employees, association members, debtors, and so forth), with an insurer, under which arrangement the cen-

tral entity is the holder of the policy, and typically assumes either partial or total responsibility for payment of premiums.
1 Couch on Ins. at § 7:1.

5. *Considine* dealt with the application of St. 1893, c. 434, § 1, a predecessor statute to Mass. G.L. c. 175, § 131, which states in pertinent part "every policy which contains a reference to the application of the insured, either as part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application, and unless so attached the same shall not be considered a part of the policy or received into evidence."

Salisbury is therefore entitled to succeed on her collection action as a matter of law.

While this case appears to offer the undesirable result decried by the Court nearly a century ago in *Albro, supra*—whereby a statute strictly applied can reward instances of deception—this Court is nevertheless bound to apply an unambiguous statute as it is written. Moreover, as "[t]he business of insurance is subject to a large measure of legislative regulation[,]... [t]he insurance company can make no complaint of valid statutes in existence and governing its contract at the time the contract was made." *Boston & M.R.R. v. Hartford Fire Ins. Co.*, 252 Mass. 432, 437, 147 N.E. 904 (1925).

### C. *Chapter 93A*

■ Finally, the parties' briefs and motions do not address summary judgment on the claim of violation of Mass.G.L. c. 93A, § 2 and c. 176D, § 3, for alleged unfair and deceptive settlement practices. The Court will deny this claim based on the following factors: The plaintiff concedes that Mr. Salisbury made a material misrepresentation; the absence of any evidence that the failure to attach the second page on the reverse side of the application was intentional, rather than a clerical photocopying error; and the general nature of the policy as group life insurance as understood under industry (albeit not statutory) standards. *See Flood v. Midland National Life Ins. Co.*, 419 Mass. 176, 184, 643 N.E.2d 439 (1994) (no violation of chapter 93A occurs where insurer could reasonably conclude that it was legally entitled to avoid payment on the policy); *see also Guity v. Commerce Ins. Co.*, 36 Mass.App.Ct. 339, 343, 631 N.E.2d 75 (1994) (no violation of chapter 176D occurs where insurer's basis for denying claim is a "plausible, reasoned legal position" that ultimately proves to be mistaken or unsuccessful).

### III. ORDER

Plaintiff's motion for summary judgment on Count I of the complaint (Docket No. 19) is **ALLOWED**. Defendant's motion for summary judgment (Docket No. 12) is **DENIED**.

Judgment is entered for the Plaintiff in the amount of $130,739.90.