CLARENDON NATIONAL INSURANCE COMPANY *vs*. AMICA
MUTUAL INSURANCE COMPANY & others.[1]

Suffolk. December 4, 2003. - March 19, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & SOSMAN, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy. *Motor Vehicle,*
Insurance. *Contract,* Illegality. *Commissioner of Insurance.*

This court concluded that two automobile liability insurance policy endorse-
ments that the plaintiff had illegally issued to nine rental car companies
without first filing the endorsements with the Commissioner of Insurance
(commissioner) pursuant to G. L. c. 175, §§ 22A, 113A, and 192, were
nevertheless binding on the plaintiff as between it and its insureds, in keep-
ing with G. L. c. 175, § 193, for the limited purpose of protecting the
plaintiff's insureds from an interruption in coverage and only to the extent
that the endorsements were consistent with the requirements of G. L.
c. 175; however, because the endorsements were illegally issued, they had
no effect on the insurance policies approved by the commissioner and is-
sued by the defendant insurers, and were effectively void for purposes of
this litigation, which sought a declaration that the coverage afforded under
the plaintiff's policies was excess over any other valid and collectible
insurance available to rental customers under their personal insurance
policies. [252-256]

CIVIL ACTION commenced in the Superior Court Department on
January 3, 2001.

The case was heard by *Allan van Gestel,* J., on motions for
summary judgment.

[1]There were sixty-eight separate defendants, falling into two categories: (1)
rentees of automobiles insured by Clarendon and persons allegedly suffering
bodily injury or property damage as a result of the negligence of the rentees;
and (2) automobile insurers of the rentees (and also the Massachusetts Insur-
ers Insolvency Fund as substitute for certain insolvent insurers). The defendant
insurers, the only defendants involved in this appeal, are Amica Mutual Insur-
ance Company, Arbella Mutual Insurance Company, Commerce Insurance
Company, Commercial Union Insurance Company, Commonwealth Mutual
Insurance Company, Hanover Insurance Company, Liberty Mutual Insurance
Company, Massachusetts Insurers Insolvency Fund, Metlife Fire & Home
Insurance Company, Peoples Service Insurance Company, Premier Insurance
Company, and Safety Insurance Group.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Ira Lipsius*, of New York (*Peter J. Pingitore & John R. Chayrigues* with him) for Clarendon National Insurance Company.

*John G. Ryan* for Commerce Insurance Company.

*Peter G. Hermes* (*Gina A. Fonte* with him) for Commercial Union Insurance Company.

*Charles F. Corcoran*, for Amica Mutual Insurance Company, was present but did not argue.

*Marc LaCasse*, for Liberty Mutual Insurance Company, was present but did not argue.

*Richard A. McGovern*, for Premier Insurance Company, was present but did not argue.

*John P. Graceffa*, for Peoples Service Insurance Company, was present but did not argue.

Spina, J. Clarendon National Insurance Company (Clarendon) commenced an action seeking a declaration that the coverage afforded under the automobile liability insurance policies it issued to nine rental car companies was excess over any other valid and collectible insurance available to rental customers under their personal motor vehicle insurance policies. Clarendon based its claim on two policy endorsements that it had failed to file with the Commissioner of Insurance (commissioner), and on provisions of the rental agreements signed by its customers. The defendants included sixteen insurance companies whose insureds were involved in nineteen different accidents while driving cars rented from car rental companies insured by Clarendon. The defendant insurers have argued that Clarendon's policy endorsements are void because they were not filed with the commissioner, as required by G. L. c. 175, §§ 22A, 113A, and 192, and that in any event the Clarendon motor vehicle liability policies must provide primary coverage as a matter of law because the accidents occurred while the rental customers were driving cars owned by Clarendon's insureds and for which Clarendon issued motor vehicle liability policies.

On cross motions for summary judgment, a judge in the Superior Court ordered judgment for the defendants Commercial

Union, CGU, Commerce, and Premier Insurance Companies,[2] ruling that because Clarendon failed to file the two policy endorsements with the commissioner pursuant to G. L. c. 175, §§ 22A, 113A, and 192, the endorsements are void, but the policies Clarendon issued to the rental car companies are otherwise valid and must be construed as if the two endorsements "do not exist." Clarendon appealed and we transferred the case here on our own motion. We affirm the judgment, but hold that G. L. c. 175, § 193, treats the illegally issued endorsements as valid for the limited purpose of protecting Clarendon's insureds from an interruption in coverage, and it requires that coverage thereunder be consistent with the requirements of G. L. c. 175.

1. *Facts.* The facts are not disputed. In 1996, 1997, and 1998, Clarendon issued business automobile insurance policies to nine rental car companies in Massachusetts. Rental customers of the companies were involved in nineteen accidents while driving their rented automobiles. Each customer owned his or her own automobile, which was insured under a standard Massachusetts automobile liability insurance policy issued by a defendant insurer.[3] As a result of each accident, a person injured, or one of the defendant insurers as subrogee of an injured person, submitted a claim for bodily injury, medical expenses, lost wages, or property damage to Clarendon as insurer of the rented car involved in the accident. Clarendon paid some, but not all, claims, and reserved its rights. It seeks a declaration that, as to all claims, each rental customer's individual policy coverage must be exhausted before Clarendon is obligated to pay under its policy, and that it is entitled to reimbursement for each claim it has paid or may pay. Each Clarendon policy includes a Massachusetts mandatory endorsement (MM 9911 07 94), which states, in part:

---

[2]Only four defendant insurers moved for summary judgment, but Clarendon concedes that the legal issues and the salient factual issues are virtually identical in all claims between it and all defendant insurers.

[3]Safety and CGU did not produce copies of their policies issued to two of the drivers in question, so it cannot be stated as fact that those drivers had a standard Massachusetts policy.

"E. ADDITIONAL CONDITIONS

"2. If anyone is entitled to PERSONAL INJURY PROTECTION benefits and also to benefits under any other insurance provided by this policy, *we will pay from this insurance first*" (emphasis added).

In addition, each Clarendon policy includes a business auto coverage form, approved by the commissioner, that states, in part:

"SECTION IV — BUSINESS AUTO CONDITIONS

"B. General Conditions.

"5. Other Insurance

"a. For any covered 'auto' you own, this Coverage Form provides *primary insurance*. For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance." (Emphasis added.)

Each Clarendon policy contains two endorsements that purport to modify the above quoted policy provisions. These endorsements were not filed with the commissioner pursuant to G. L. c. 175, §§ 22A, 113A, and 192. Endorsement No. 3 states, in part:

"SECTION II — LIABILITY COVERAGE

"C. LIMIT OF INSURANCE.

"The limit of our liability for the insurance provided by this endorsement for the rentee, is the minimum limit required by any applicable compulsory or financial responsibility law, unless endorsed hereon. This Insurance provided by this endorsement is *excess over any other collectible insurance* (whether primary, excess or contingent)" (emphasis added).

"SECTION IV — BUSINESS AUTO CONDITIONS

"B. General Conditions

"5. Other Insurance

"For any covered auto, the insurance provided by

this policy is *excess over any other collectible insurance* whether primary, excess or contingent" (emphasis added).

"B. 5. d. The insurance provided by this policy for the rentee is *subject to the terms, conditions, restrictions and limitations contained in the rental agreement . . .*" (emphasis added).

Endorsement No. 2 states, in part:

"The insurance provided for any lessee or rentee under this policy is *subject to the terms of the lease or rental agreement*, including any limit of liability or conditions, restrictions and limitations contained therein." (Emphasis added.)

The rental agreements used by the different rental companies are not uniform, but state variously that the insurance provided by the rental car company is "excess insurance over" or "secondary" to the customer's own policy, or that the rental company provides no automobile liability insurance coverage for the rental customer. One rental agreement is silent on the matter but contains the customer's certification that he maintains an automobile liability insurance policy with minimum coverage limits required by law.

Each customer owned his or her own personal automobile for which one of the defendant insurers issued a standard sixth edition Massachusetts automobile liability insurance policy with coverage for bodily injury, personal injury protection, and property damage required by G. L. c. 90, §§ 34A and 34O. See note 3, *supra.* As to both bodily injury and property damage the policies state, in part:

"[I]f someone covered under this Part is using an auto he or she does not own at the time of the accident, *the owner's auto insurance must pay its limits before we pay*" (emphasis added).

2. *Discussion.* Clarendon argues that the motion judge erred by concluding that endorsements no. 2 and no. 3 have no effect because they were not filed with the commissioner pursu-

ant to G. L. c. 175, §§ 22A,[4] 113A,[5] and 192.[6] Clarendon contends that, although not filed with the commissioner, endorsements no. 2 and no. 3 are effective by operation of G. L. c. 175, § 193, which states:

> "Any policy of insurance . . . issued in violation of any provision of this chapter shall be valid and binding upon the company issuing it, and the rights, duties and obligations of the parties thereto shall be determined by this chapter."

Clarendon relies on *Hewins* v. *London Assurance Corp.*, 184 Mass. 177 (1903), where the court applied St. 1894, c. 522, §§ 60, 105, a predecessor to G. L. c. 175, § 193, to a fire insurance policy that did not comply with the standard statutory form policy or permissible variations. The 1894 statute stated that no company could issue a policy that conflicted with the statutory form, and any offending company would be subject to

---

[4]General Laws c. 175, § 22A, states: "No company shall issue any policy of insurance . . . which insures any person against legal liability for loss or damage on account of the bodily injury or death of any other person or on account of any damages to the property of another, arising out of the ownership, maintenance, control or use of motor vehicles, until a copy of the form of the policy has been on file for thirty days with the commissioner, unless before the expiration of said thirty days he shall have approved the form of the policy in writing; nor if the commissioner notifies the company in writing within said thirty days that the form of the policy does not comply with the laws of the commonwealth, specifying his reasons therefor . . . but nothing in the foregoing provisions of this section shall permit the incorporation in any policy issued under . . . [§ 113A] . . . of any coverage not otherwise permitted by this chapter to be incorporated therein."

[5]General Laws c. 175, § 113A, states: "No motor vehicle liability policy as defined in [§ 34A] of [c. 90] shall be issued or delivered in the commonwealth until a copy of the form of the policy has been on file with the commissioner for at least thirty days, unless before the expiration of said period the commissioner shall have approved the form of the policy in writing, nor if the commissioner notifies the company in writing that in his opinion the form of said policy does not comply with the laws of the commonwealth, specifying his reasons therefor, provided that he shall notify the company in writing within said period of his approval or disapproval thereof . . . ."

[6]General Laws c. 175, § 192, states: "All provisions of law relative to the filing of policy forms with, and the approval of such forms by, the commissioner shall also apply to all forms of . . . endorsements . . . designed to be attached to such policy forms and when so attached to constitute a part of the contract . . . ."

a fine.[7] The 1894 statute further provided that any such policy would be binding on the company. *Id.* at 183. The court held that because the statute contained no rule of interpretation of a policy issued contrary to law, "[t]he penalty suffered by the company is a fine, *and not a liability to be held on a contract different from that made by it*" (emphasis added). *Id.* at 184.

We agree with Clarendon that, contrary to the ruling of the motion judge, the endorsements are not without existence, despite Clarendon's failure to file them with the commissioner. Section 193, made applicable to endorsements no. 2 and no. 3 by § 192, like its 1894 predecessor makes illegally issued endorsements "valid and binding" on the company. Unlike the 1894 statute, however, § 193 contains a rule of interpretation of illegally issued policies and endorsements: "the rights, duties and obligations of the parties [to the policy] shall be determined by [G. L. c. 175]." This language, as the *Hewins* case suggests, can leave an insurer "liabl[e] on a contract different from that made by it." *Id.* at 184. We conclude that endorsements no. 2 and no. 3, although issued in violation of G. L. c. 175, §§ 22A, 113A, and 192, are binding on Clarendon, as between it and its insureds. However, to the extent that the endorsements are inconsistent with G. L. c. 175 they can have no effect, and Clarendon's policy (with endorsements) will be construed as conforming with G. L. c. 175.

The question remains, however, whether, as Clarendon implies, § 193 validates illegally issued policies for *all* purposes, an issue that was not argued or decided in the *Hewins* case. Clarendon contends that its endorsements are not inconsistent with G. L. c. 175 or any regulation promulgated thereunder because there is no requirement that an owner's policy provide primary coverage, and therefore the endorsements are valid by operation of § 193.[8] Clarendon's argument

---

[7]The current statutory scheme also permits a fine. See G. L. c. 175, § 189.

[8]The defendant insurers do not argue that the standard Massachusetts liability insurance policy and the Massachusetts business auto coverage form, the terms of which were determined by the commissioner under her rate setting and rule making authority, as appearing in G. L. c. 175, § 113B, twenty-first par., and her approval authority, as appearing in G. L. c. 175, § 2B, also have the status of a regulation. See *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 395 Mass. 765, 773-774 (1985).

assumes that § 193 operates to cure, for all purposes, its failure to obtain the commissioner's approval of its endorsements before they were issued. Section 193 has no such effect. It gives the endorsements limited validity for the purpose of protecting Clarendon's insureds against an interruption in coverage, and by its own terms it affects only the relationship between the issuer and its insured. It has no effect on the commissioner. Section 193 does not alter the status of Clarendon's endorsements as lacking the approval of the commissioner.

When considering the effect of the illegally issued endorsements on third parties, § 193 must be read in harmony with related provisions of G. L. c. 175 so that the statutory scheme, as a whole, is internally consistent. See *Massachusetts Ass'n of Ins. Agents* v. *Commissioner of Ins.*, 425 Mass. 477, 481 (1997). A condition precedent to the validity of endorsements no. 2 and no. 3 is that they be filed with the commissioner under G. L. c. 175, §§ 22A and 113A. The commissioner then has thirty days to approve or disapprove the endorsements in writing, or constructively approve them by taking no action within thirty days of filing. The commissioner's authority to approve all policies and endorsements before they may be issued is an integral component of her authority to set the language of compulsory motor vehicle liability policies, which we have recognized as necessary and incidental to her power to fix the rates for compulsory coverage under G. L. c. 175, § 113B. See *Liberty Mut. Ins. Co.* v. *Commissioner of Ins.*, 395 Mass. 765, 771 (1985). Under the existing statutory scheme, only the commissioner may approve a policy, either expressly or by default.

The reading of § 193 that Clarendon urges would effectively subvert the statutory scheme created for fixing compulsory motor vehicle liability insurance coverage rates. It would permit an insurer unilaterally to issue a policy that effectively overrides the standard policy language required of all other carriers, and in doing so alter the cornerstone on which the commissioner relies to set automobile insurance rates for the entire industry.[9]

---

[9]The record contains correspondence from legal counsel to the commissioner indicating that, in the opinion of the division of insurance, an owner's policy provides "primary" coverage.

Certainly the Legislature did not intend § 193 to produce such a result. Rather, § 193 validates illegally issued policies for the limited purpose of protecting the issuer's insureds, as discussed. Because the endorsements were illegally issued, they have no effect on the policies approved by the commissioner and issued by the defendant insurers, and they are effectively void for purposes of this litigation.

*Judgment affirmed.*