24CA1373 Wright v United Services 08-21-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA1373
El Paso County District Court No. 23CV31825
Honorable David Shakes, Judge

Bruce M. Wright,

Plaintiff-Appellee,

v.

United States Services Automobile Association, a/k/a USAA, a Texas corporation and a Colorado authorized insurance company,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division I
Opinion by JUDGE MOULTRIE
J. Jones and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced August 21, 2025

J. Gregory Walta, Colorado Springs, Colorado, for Plaintiff-Appellee

Spencer Fane LLP, Jeremy A. Moseley, Hannah S. McCalla, Denver, Colorado, for Defendant-Appellant

¶ 1    Defendant, United Services Automobile Association (USAA), appeals the judgment entered in favor of plaintiff, Bruce M. Wright. We reverse and remand the case to the district court.

## I.    Background

¶ 2    In May 2023, an underinsured motorist hit and seriously injured Wright while he was riding his bicycle. Wright was insured at the time of the accident, having maintained automobile insurance through USAA for decades. From at least 2002 until Wright's accident in 2023, Wright's policy included uninsured motorist and underinsured motorist coverage (UM/UIM coverage) and bodily injury coverage (BI coverage). His policy included BI coverage in the amount of $300,000 per person and $500,000 per accident ($300,000/$500,000).

¶ 3    Wright's injury-related expenses exceeded the underinsured driver's BI coverage policy limits, so Wright sought to use his own UM/UIM coverage, which he believed to be equal to his BI coverage at the time of the accident: $300,000/$500,000.

¶ 4    Shortly after the accident, Wright informed USAA that he had been injured by an underinsured driver and that his injuries totaled more than the $300,000/$500,000 of UM/UIM coverage provided

by his policy. Wright asserted that he was entitled to $300,000/$500,000 of UM/UIM coverage based on a 2008 policy notice he received saying his UM/UIM coverage limits would equal his BI coverage limits unless he returned to USAA a "Rejection/Selection Form" (rejection/selection form) rejecting the UM/UIM coverage limits, which he didn't do.

¶ 5    USAA rejected Wright's assertion that his UM/UIM coverage limits were $300,000/$500,000. Instead, USAA told Wright his UM/UIM coverage limits were $25,000 per person and $50,000 per accident ($25,000/$50,000) and had been since at least 2002.

¶ 6    Wright filed a complaint against USAA in district court that, as relevant here, asserted a claim for declaratory judgment. Wright asked the court to declare that he was entitled to UM/UIM coverage in the amount of $300,000/$500,000 because (1) USAA's 2008 notice was defective under section 10-4-609, C.R.S. 2024; "and/or" (2) he chose UM/UIM coverage of $300,000/$500,000 by not "completing, signing[,] and returning the [rejection/selection form]."

¶ 7    Wright filed a motion (the motion) in support of his request for declaratory judgment. Included as an exhibit to the motion was a form from Wright's 2008 policy renewal documents generally

explaining what UM/UIM coverage entails (2008 summary disclosure form). The 2008 summary disclosure form included the following language (the increased coverage language):

> Uninsured Motorists (UM) Coverage:
>
> . . . .
>
> Is issued with UM Coverage limits equal to your BI [coverage] limits unless you reject UM Coverage or select lower UM Coverage limits by completing, signing, and returning the Rejection/Selection Form by mail or at usaa.com.

As he alleged in his complaint, Wright argued that the increased coverage language was an offer from USAA for UM/UIM coverage equal to his BI coverage limits that he accepted by not completing the rejection/selection form.

¶ 8    He also argued that because section 10-4-609(2) required USAA to notify him of his coverage options in a manner reasonably calculated to enable him to make an informed decision about whether to obtain UM/UIM coverage limits equal to his BI coverage limits, any ambiguities resulting from the increased coverage language should be resolved in his favor to require reformation of the terms of his policy.

¶ 9 For purposes of Wright's request for declaratory judgment, USAA didn't dispute that Wright was injured by an underinsured driver or that he had maintained a policy with UM/UIM coverage for decades. However, in its response to the motion, USAA argued that Wright's references to his insurance policy documents were incomplete. USAA submitted to the court Wright's complete automobile policy packets for the years 2002, 2008, 2014, 2020, 2022, and 2023 (collectively, the policy packets). USAA argued that (1) the plain language of the policies limited Wright's UM/UIM coverage to $25,000/$50,000, and (2) it had complied with section 10-4-609(2) by offering Wright higher UM/UIM coverage, as demonstrated in the policy packets, so reformation of the 2008 policy or any subsequent policies was precluded. USAA also noted that Wright's $25,000/$50,000 UM/UIM coverage limit had remained in place, unchanged through every renewal period since 2002, despite USAA's repeated notice to Wright that higher coverage limits were available. USAA asked the court to deny Wright's request for declaratory judgment.

¶ 10 The court treated the motion as a C.R.C.P. 56(h) motion for a determination of a question of law and granted it.

¶ 11     In its ruling, the court relied on *Shelter Mutual Insurance Co. v. Mid-Century Insurance Co.*, 246 P.3d 651 (Colo. 2011), for its analysis of an insurer's responsibility to adequately notify a policyholder of a reduction in coverage during the policy renewal period. The court also relied on *Bailey v. Lincoln General Insurance Co.*, 255 P.3d 1039 (Colo. 2011), for guidance in interpreting exclusionary language[1] in insurance contracts and applying the doctrine of reasonable expectations.

¶ 12     The court reasoned as follows:

- While the issue in this case "[was] not precisely a renewal reduction situation," it found the analysis and legal principles in *Shelter* and *Bailey* persuasive.

- *Shelter* and *Bailey* advise that insurance policy renewal contracts are subject to heightened scrutiny and the doctrine of "reasonable expectations," which requires insurers to adequately relay to policyholders any coverage-limiting provisions.

---

[1] "An exclusion" is a provision of an insurance policy "that excepts certain events or conditions from coverage. *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1029 (Colo. App. 2002).

- The reasonable expectations doctrine has two prongs: first, whether an ordinary, objectively reasonable person would fail to understand that he is not entitled to the coverage at issue based on the language of the policy and second, whether, because of circumstances attributable to an insurer, an ordinary, objectively reasonable person would be deceived into believing that he is entitled to coverage despite the insurer's contention otherwise.

- Wright, as an accomplished commercial attorney, wasn't subject to an ordinary layperson standard under the first prong of the reasonable expectations standard.

- The second prong of the reasonable expectations doctrine applied because the 2008 summary disclosure form "would lead any reasonable person to believe that he had UM/UIM coverage in the same amount as his [BI] coverage [of] $300,000-$500,000 and that said coverage would continue in place until he took some affirmative action to make a change."

¶ 13     The court concluded that USAA

> offered no evidence that Wright was fully and fairly notified that the UM/UIM coverage was anything other than the amount of Wright's [BI] coverage — $300,000-$500,000. Simply directing Wright to read the terms of his policy is insufficient when USAA made the representation in the 2008 notice that UM/UIM coverage would be in the amount of Wright's [BI] coverage — $300,000-$500,000 — and would remain in effect unless he requested otherwise in writing.

¶ 14     The court thus ruled that Wright's UM/UIM coverage at the time of his 2023 accident was $300,000/$500,000.

¶ 15     USAA asked the court to certify the judgment under C.R.C.P. 54(b) and stay the litigation pending resolution of its appeal to this court. The court granted USAA's request to certify the judgment.

¶ 16     On appeal, USAA asserts that the 2008 summary disclosure form satisfied its statutory duty under section 10-4-609(2) to provide Wright with adequate notice of his right to purchase UM/UIM coverage equal to his BI coverage limits. USAA also asserts that the principles set forth in *Shelter* and *Bailey* are inapplicable to this case, and the court's application of those cases resulted in an erroneous determination that Wright is entitled to UM/UIM coverage in the amount of $300,000/$500,000.

7

¶ 17   For reasons discussed below, we don't need to address USAA's first assertion.  But we agree with USAA that the court reversibly erred by applying the principles of *Shelter* and *Bailey* to the facts of this case to conclude that Wright is entitled to UM/UIM coverage in the amount of $300,000/$500,000.

II.   Applicable Legal Principles and Standard of Review

¶ 18   In 2008, the General Assembly overhauled section 10-4-609, which included rewriting subsection (2).  *See* Ch. 413, sec. 2, § 10-4-609(2), 2007 Colo. Sess. Laws 1921-22; *Airth v. Zurich Am. Ins. Co.*, 2018 COA 9, ¶ 17 n.5.  *Compare* § 10-4-609(2), C.R.S. 2007, *with* § 10-4-609(2), C.R.S. 2024.  By its amendment of subsection (2), the General Assembly required insurers to offer policyholders "the right to obtain uninsured motorist coverage in an amount equal to the [policyholder's] bodily injury liability limits" before a policy is issued or renewed.  § 10-4-609(2).  The legislative purpose of section 10-4-609 is to provide drivers "with an opportunity to make an informed decision on an appropriate level of UM/UIM coverage," *Mullen v. Metro. Cas. Ins. Co.*, 2021 COA 149, ¶ 20 (quoting *Allstate Ins. Co. v. Parfrey*, 830 P.2d 905, 912 (Colo. 1992)), and insurers must provide policyholders with UM/UIM

8

coverage of at least $25,000/$50,000 unless the policyholder objects to UM/UIM coverage in writing, *id.* at ¶ 17. *See Massingill v. State Farm Mut. Auto. Ins. Co.*, 176 P.3d 816, 820 (Colo. App. 2007) ("An insurer must offer UM/UIM coverage in an automobile policy, but the insured may reject such coverage in writing.").

¶ 19    We interpret an insurance policy de novo, construing it according to the principles of contract interpretation. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 801 (Colo. 2007). We read the provisions of the policy as a whole, *Sachs v. Am. Fam. Mut. Ins. Co.*, 251 P.3d 543, 546 (Colo. App. 2010), and enforce it as written if it is unambiguous, *Dupre v. Allstate Ins. Co.*, 62 P.3d 1024, 1027 (Colo. App. 2002). "[A]n insurance policy" is "ambiguous if it is susceptible of more than one reasonable interpretation." *Id.* And while we liberally construe ambiguous provisions in favor of the policyholder, we neither delete coverage nor extend coverage beyond that for which the insured contracted. *Sachs*, 251 P.3d at 546.

¶ 20    We also review de novo a court's grant of partial summary judgment.[2] *See In re Estate of McCreath*, 240 P.3d 413, 417 (Colo. App. 2009) (treating an order issued under C.R.C.P. 56(h) that had a "final, dispositive effect" on pending claims as a partial summary judgment, subject to de novo review); *see also Ryser v. Shelter Mut. Ins. Co.*, 2021 CO 11, ¶ 13 (summary judgment is reviewed de novo), *superseded by statute*, Ch. 169, sec. 1, § 15-5-602(3), 2018 Colo. Sess. Laws 1166, *as recognized in In re Thomas E. Hunn Living Tr.*, 2024 COA 51.  When, as here, "the material facts are undisputed, summary judgment is appropriate only when the pleadings and supporting documents show that the moving party is entitled to judgment as a matter of law." *Ryser*, ¶ 13.  We grant the nonmoving party the benefit of all favorable inferences reasonably

---

[2] We acknowledge that the court treated Wright's motion as a C.R.C.P. 56(h) motion for a determination of a question of law.  But because the court's order resolved in its entirety the claim from Wright's complaint that had a dispositive effect on his remaining claims — namely, the amount of UM/UIM coverage to which Wright was entitled — the order operated as a partial summary judgment under C.R.C.P. 56(c).  *See In re Estate of McCreath*, 240 P.3d 413, 417 (Colo. App. 2009), *superseded by statute*, Ch. 169, sec. 1, § 15-5-602(3), 2018 Colo. Sess. Laws 1166, *as recognized in In re Thomas E. Hunn Living Tr.*, 2024 COA 51.  We therefore review the order under the legal principles applicable to review of summary judgments.

drawn from the undisputed facts and resolve all doubts against the moving party. *Hardegger v. Clark*, 2017 CO 96, ¶ 13.

### III.   Analysis

#### A.   We Need Not Address Whether USAA Satisfied Its Statutory Duty of Notice under Section 10-4-609

¶ 21   As noted, Wright's first asserted premise for declaratory judgment was USAA's alleged violation of section 10-4-609.

¶ 22   But Wright conceded in his answer brief and in oral argument that USAA didn't violate section 10-4-609.  Moreover, the district court didn't analyze USAA's compliance with section 10-4-609. Thus, the parties' dispute doesn't concern whether the 2008 summary disclosure form provided Wright with adequate notice regarding his ability to purchase increased UM/UIM coverage; rather, the parties' dispute concerns the effect of the increased coverage language in USAA's 2008 summary disclosure form.

¶ 23   Wright contends that the (statutorily compliant) 2008 summary disclosure form informed him that he had UM/UIM coverage equal to his BI coverage *unless* he selected a lower amount of coverage by signing and returning the rejection/selection form. He asserts that, because he didn't return the rejection/selection

form or otherwise notify USAA in writing that he was rejecting the UM/UIM coverage offered in the increased coverage language, "USAA should be bound by the clear language of [the 2008 summary disclosure form]," or he should have "all ambiguities" resolved in his favor as required by *Shelter*. As we discuss next, we aren't persuaded.

B. *Shelter* and *Bailey* Aren't Applicable to This Case

¶ 24 USAA contends that, because it never reduced or otherwise changed Wright's coverage, the court erred by relying on *Shelter*'s coverage reduction principles. USAA also contends the court erred by applying the second prong of the reasonable expectations doctrine set forth in *Bailey* because that prong only applies when "procedural or substantive deception attributable to the insurer" leads an ordinary, objectively reasonable policyholder to believe that he is entitled to coverage later denied by the insurer.[3] We agree with both contentions.

---

[3] USAA also contends that Wright's claim is time barred by a three-year statute of limitations. Given our disposition of USAA's other assertions in its favor, we need not reach this alternative argument.

¶ 25    In *Shelter*, the insurer made a change to the policyholder's coverage: It added a "step-down" provision limiting the insurer's liability for permissive drivers to the minimum coverage amounts mandated by law. *Id.* at 656. This change resulted in coverage amounts for permissive drivers that were less than what the policyholder had previously selected. *Id.* The insurer sent the policyholder a packet of policy renewal forms, but the renewal forms didn't tell the policyholder about the coverage reduction, nor did the insurer highlight the change in the policy. *Id.*

¶ 26    The *Shelter* court concluded that, because the policyholder didn't receive adequate notice of the reduction in coverage, the step-down provision was unenforceable. *Id.* at 657. In reaching this conclusion, the supreme court reasoned that "[i]nsurers seeking to avoid liability 'must do so in clear and unequivocal language and must call such *limiting conditions* to the attention of the insured.'" *Id.* (emphasis added) (quoting *Cyprus Amax Mins. Co. v. Lexington Ins. Co.*, 74 P.3d 294, 307 (Colo. 2003)). The *Shelter* court also reasoned that when "insureds have not been adequately notified of a *reduction in coverage*, they have 'an objectively reasonable expectation' that their coverage has not been reduced."

*Id.* at 658 (emphasis added) (quoting *Tepe v. Rocky Mountain Hosp. & Med. Servs.*, 893 P.2d 1323, 1328 (Colo. App. 1994)).

¶ 27    In *Bailey*, the supreme court explained that Colorado's doctrine of reasonable expectations renders exclusionary language unenforceable when, as relevant here, "an ordinary, objectively reasonable insured would be deceived into believing that he or she is entitled to coverage, while the insurer would maintain he or she is not," because of circumstances attributable to an insurer. 255 P.3d at 1043.

¶ 28    Yet, despite noting that "this case is not precisely a renewal reduction situation," the district court concluded that the rationale of *Shelter* and *Bailey* required the court to "analyze the 'totality of the circumstances involved in the transaction from the point of view of an ordinary layperson.'" *See Sanchez v. Conn. Gen. Life Ins. Co.*, 681 P.2d 974, 977 (Colo. App. 1984).

¶ 29    The court erred by analyzing this claim through the lens of *Shelter* and *Bailey*, for two reasons.

¶ 30    First, unlike in *Shelter*, USAA didn't reduce Wright's coverage. The policy declarations in each of the policy packets Wright received from 2002 until his accident in 2023 show that Wright's UM/UIM

14

coverage limits were $25,000/$50,000.  And nearly all of the policy packets Wright received contained a notice similar to the 2008 summary disclosure form notifying him of his ability to increase his UM/UIM coverage or reject coverage altogether.  While *Shelter* recognizes that "it is insufficient for an insurer merely to provide a new policy and instruct 'the insured to carefully read' it," that sentiment only applies in the context of an insurer's *reduction* of coverage.  *Shelter*, 246 P.3d at 658 (quoting *Gov't Emp. Ins. Co. v. United States*, 400 F.2d 172, 175 (10th Cir. 1968)).  Nothing in the record supports the conclusion that USAA reduced Wright's coverage at any point between 2002 and 2023; thus, the legal principles driving the court's decision in *Shelter* are inapplicable.

¶ 31     Second, as explained in *Bailey*, the doctrine of reasonable expectations renders *exclusionary language* in an insurance policy unenforceable if certain conditions are met.  255 P.3d at 1043, 1048.  But we fail to see — and Wright doesn't explain — how the increased coverage language from the 2008 summary disclosure is exclusionary.  *See Dupre*, 62 P.3d at 1029 ("An exclusion" is a provision of an insurance policy "that excepts certain events or conditions from coverage.") (citation omitted).

¶ 32    Indeed, Wright asserts that the language from the 2008 summary disclosure entitles him to *additional* coverage. But the *Bailey* court made clear that "the doctrine of reasonable expectations 'does not contemplate the expansion of coverage on a general equitable basis.'" 255 P.3d at 1054 (quoting *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 206 (Iowa 1995)). And "[t]he 'bare allegations' of policyholders that they expected certain coverage are insufficient to establish grounds for relief sounding in reasonable expectations." *Id.* (citation omitted).

¶ 33    Rather, for the increased coverage language to be construed against USAA, Wright must demonstrate that USAA engaged in "procedural or substantive deception" that would lead "an objectively reasonable" policyholder to believe that he possessed the increased coverage. *Id.*; *see Davis v. M.L.G. Corp.*, 712 P.2d 985, 991 (Colo. 1986) (discussing the factors courts consider to determine whether a contract is procedurally or substantively unconscionable); *see also Tillman v. Com. Credit Loans, Inc.*, 655 S.E.2d 362, 370 (N.C. 2008) (defining procedural unconscionability as defects in the bargaining process such as unfair surprise, lack of meaningful choice, or inequality of bargaining power and

substantive unconscionability as harsh, one-sided, or oppressive contract terms).

¶ 34    Wright didn't present evidence supporting his motion demonstrating that the increased coverage language was deceptive when considered in the context of the entire 2008 policy packet and the circumstances under which the policy itself was entered into, such that an objectively reasonable policyholder would believe that he had been given UM/UIM coverage in limits ten to twelve times higher than his existing policy without having to pay an increased premium. *See Allen v. United Servs. Auto. Ass'n*, 907 F.3d 1230, 1235-36 (10th Cir. 2018) (concluding that USAA's summary disclosure form wasn't deceptive because an objectively reasonable person would not have been deceived into believing the disclosure form created a promise of indefinite medical-payments coverage).

¶ 35    Even assuming the increased coverage language was somehow deceptive, Wright also didn't present evidence explaining why it was objectively reasonable for him to believe he was entitled to increased UM/UIM coverage in 2023 based on the 2008 summary disclosure form, despite being informed in several later policy packets —

including his 2023 packet — that his UM/UIM coverage limits were $25,000/$50,000.

C. Wright's UM/UIM Coverage Is Limited to $25,000/$50,000

¶ 36 For three reasons, we also reject Wright's alternative arguments that (1) the "clear" language of the 2008 summary disclosure entitled him to UM/UIM coverage limits of $300,000/$500,000, and (2) the 2008 summary disclosure was ambiguous and should be construed against USAA.

¶ 37 First, the 2008 summary disclosure form was merely an overview of the categories of coverage and policy terms generally applicable to any insurance policy; nothing about the plain language of that form indicates that it was specific to Wright's circumstances or insurance needs. *See* Black's Law Dictionary 1742 (12th ed. 2024) (defining the adjective "summary" as "[s]hort; concise" and "[w]ithout the usual formalities"). A policy summary is designed to simplify and highlight key information, but it is not intended to replace the policy itself. *See* § 10-4-111(1), C.R.S. 2024 (requiring "[e]very insurer issuing policies of . . . automobile insurance" to create a summary disclosure that explains in simple terms the major coverages and exclusions of their insurance

policies; advises the policyholder to read the policy for complete details; informs the policyholder that the disclosure form "shall not be construed to replace any provision of the policy itself"; and states that, "[i]n the event of any conflict between the policy and the disclosure form, the provisions of the policy shall prevail"). Moreover, the 2008 summary disclosure form explicitly says,

> This summary disclosure form is a basic guide to the major coverages and exclusions in your policy.  It is only a general description and not a statement of contract or a policy of any kind. All coverage is subject to the terms, conditions, and exclusions of your policy and all applicable endorsements.
>
> *PLEASE READ YOUR POLICY FOR COMPLETE DETAILS!  THIS SUMMARY DISCLOSURE FORM SHALL NOT BE CONSTRUED TO REPLACE ANY PROVISION OF THE POLICY ITSELF*.

¶ 38    Second, construing the entirety of the 2008 policy together, we can't conclude that its terms are ambiguous.  Because the policy isn't ambiguous, "we give effect to the intent and reasonable expectations of the parties" and enforce the policy's plain language. *Hoang*, 149 P.3d at 801.

¶ 39    The plain language of the 2008 policy indicated that Wright's UM/UIM coverage was limited to $25,000/$50,000.  The UM/UIM

19

coverage limits listed on the policy itself remained unchanged from 2002 to 2023. Additionally, each of the policy packets USAA sent to Wright contained information about what he *was* paying for, his existing UM/UIM coverage limits of $25,000/$50,000 — as indicated on the policy itself — and what he *would* pay for UM/UIM coverage limits of $300,000/$500,000 — as indicated on the rejection/selection forms through 2022.[4] The cost for UM/UIM coverage limits of $300,000/$500,000 is nearly three times the cost of UM/UIM coverage in the amount of $25,000/$50,000. Despite Wright's assertions that USAA had granted him increased coverage, his policy documents reflect that the premiums he paid remained consistent with the price associated with his lower amount of coverage. Under these circumstances, it was unreasonable for Wright to expect that USAA would provide significantly higher UM/UIM coverage limits at the same price he was paying for his lower coverage limits.

¶ 40    Third, Wright's assertion that USAA is bound by the terms of the increased coverage language because it was a contractual offer

---

[4] The record does not contain a rejection/selection form for the 2023 renewal packet.

20

from USAA that he accepted is not supported. He conceded during oral argument that there is no evidence in the record demonstrating that he relied on the increased coverage language, and his failure to pay increased premiums in exchange for increased coverage doesn't support the formation of a contract. *See Marquardt v. Perry*, 200 P.3d 1126, 1129 (Colo. App. 2008) (noting that a valid contract is formed when there is an offer, acceptance, and consideration that supports the agreement); § 10-1-102, C.R.S. 2024 (defining "[i]nsurance" as "a contract whereby one, for consideration, undertakes to indemnify another or to pay a specified or ascertainable amount or benefit upon determinable risk contingencies"); Black's Law Dictionary 384 (12th ed. 2024) (defining "consideration" as "[s]omething (such as an act, a forbearance, or a return promise) bargained for and received by a promisor from a promisee").

¶ 41  Thus, because neither *Shelter* nor *Bailey* applies to the facts of this case, and because the plain language of Wright's policy as a whole indicates that his UM/UIM coverage limits are $25,000/$50,000, we enforce the policy as it is written.

## IV. Disposition

¶ 42 The judgment is reversed, and the case is remanded to the district court with instructions to declare that Wright's UM/UIM coverage under the 2023 policy is limited to $25,000/$50,000, consistent with this opinion.

JUDGE J. JONES and JUDGE KUHN concur.